IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| A.H., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| | )   CASE NO. 4:24CV1401 HEA |
| | ) |
| MONTGOMERY COUNTY, | ) |
| MISSOURI, et al., | ) |
| | ) |
|     Defendants. | ) |

### OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants McKinney, Crave, Helvey, Christian, and Sheets' Motion to Dismiss. [Doc. No. 19] and Defendants Thorpe, Staas, Montgomery County, Missouri, Foree, Pape, Penning, and Storzer's Motion to Dismiss, [Doc. No. 46]. Plaintiff opposes the Motions. For the reasons set forth below, the Motions will be granted in part and denied in part.

### Facts and Background

Plaintiff's Complaint alleges that while she was a pretrial detainee in the Montgomery County Jail and the Warren County Jail from August 2015 until January 21, 2019, she was sexually assaulted and harassed.

Prior to and after August 30, 2016, Plaintiff made complaints to Defendants Foree, Pape, Penning and Storzer, who were supervisory employees, about sexual harassment by Montgomery County correctional officers, including improper

sexual touching by Defendants Sheets and Christian of Plaintiffs breasts and vagina. On August 30, 2016, Defendants Foree, Pape, Penning and Storzer were aware of improper sexual touching of Plaintiff's breasts and vagina perpetrated by Defendants Sheets and Christian, but did nothing about her complaints to protect or prevent their ongoing sexual harassment and improper sexual touching which continued to be endured by Plaintiff.

Prior to and after August 30, 2016, as ongoing and improper conduct, Defendants Thorp and McKinney made sexually explicit comments to Plaintiff and sexually harassed her throughout the time she was a detainee at the Montgomery County Jail. Prior to and after August 30, 2016, as ongoing and improper conduct, Defendant Craven also made sexually explicit comments about Plaintiff's body, including her breasts and asked if they were real, as well as touching them to find out if they were real or not.

Prior to and after August 30, 2016, as ongoing improper conduct, Defendant Helvey would open Plaintiff's cell door to allow Defendant Christian to improperly enter her cell allowing him to touch Plaintiff's breasts and vagina.

Prior to and after August 30, 2016, as ongoing conduct, Defendant Christian improperly entered Plaintiff's cell on several occasions to ask to see her breasts, would sexually harass Plaintiff and her cellmate over the intercom and ask Plaintiff to perform leud sexual actions, get naked and give him massages. He also entered

2

Plaintiff's cell when her cell mate was sleeping and touch Plaintiff's vagina against her will.

On August 30, 2016, and thereafter, on at least two occasions, Defendant Sheets entered Plaintiff's cell improperly and against her will placed his penis forcefully into her vagina. After August 30, 2016, and until her acquittal, Plaintiff suffered from ongoing improper conduct from Defendant Staas who would sexually harass Plaintiff, including telling Plaintiff to get used to the treatment she had in the jail and way of life and just accept it. He also told her that Defendant Sheets was just having fun with her like a horse you ride hard put away wet.

After August 30, 2016, and until her acquittal, whenever Plaintiff was a temporary detainee at the Warren County Jail, Defendants Poirier and Rickard sexually harassed and verbally abused Plaintiff on an ongoing basis, including telling other guards in Warren County Jail about Plaintiff's sexual assaults at the Montgomery County Jail saying she had sex with all her guards and was a dirty whore, as well as telling other Warren County guards and inmates on several occasions and until her acquittal about a private video that Plaintiff had made for her husband several years before.

After August 30, 2016, and until her acquittal, whenever Plaintiff was a temporary detainee at the Warren County Jail, Defendant Edwards sexually

3

harassed Plaintiff on several occasions until her acquittal, telling her to get naked and dance when she was in her cell, asking for a threesome with Plaintiff and her cell mate and telling Plaintiff he masturbated to the private video Plaintiff made for her husband that was shared and published to whomever would listen, whether other guards or inmates in the Warren County Jail, by Defendants Poirier and Rickard.

Plaintiff's Complaint consists of the following claims: Count I Sexual harassment and assault in violation of the Fourth, Eight and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 against Defendants Thorpe, McKinney, Craven, Helvey, Christian, Sheets, and Staas, (Count I); Negligent infliction of emotional distress against Foree, Pape, Penning, and Storzer, (Count II); Deliberately indifferent policies, practices, customs, training, and supervision in violation of the Fourth and Fourteenth Amendments against Montgomery County in violation of 42 u>S.C. §1983, (Count III); Negligent infliction of emotional distress against Poirier, Rickard, and Edwards, (Count IV); Intentional infliction of emotional distress against Poirier, Rickard, and  Edwards, (COUNT V).

## **Legal Standard**

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When analyzing a motion to

4

dismiss, "a court must accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the nonmoving party." *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014). However, courts "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). The complaint must allege sufficient facts to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 555 (citing 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216 at 235-236 (3d ed. 2004)). "Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997)).

## Discussion

Defendants all argue the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) arguing Plaintiff's claims against them are barred by the applicable statutes of limitations. Alternatively Defendants argue they are entitled to qualified immunity and that Plaintiff fails to state a claim upon which relief may be granted.

**Timeliness of Filing**

Plaintiff contends her claims are timely due to Missouri's savings statute, Mo. Rev. Stat. § 516.230, which allows the refiling of an action within one year

5

after a claim has been dismissed without prejudice, so long as the original action was filed within the relevant statute of limitations period.

Defendants acknowledge that Plaintiff filed her initial Complaint within the applicable statutes of limitations, see Cause No. 21CV1077 MTS. They contend, however, that Missouri's savings statute does not apply to Plaintiffs' § 1983 claims because that claim is not specifically enumerated in Missouri's statutes of limitations, Mo. Rev. Stat. §§ 516.010 to 516.370.

The Missouri five-year personal injury statute of limitations applies to claims brought pursuant to 42 U.S.C. § 1983 and 1985. *See Chandler v. Presiding Judge, Callaway Cnty.*, 838 F.2d 977, 978-79 (8th Cir. 1988) (Missouri's personal injury statute of limitations, Mo. Rev. Stat. § 516.120, applies to § 1983 claims); "Borrowing Missouri's statute of limitations also requires borrowing Missouri's tolling statutes," *Chandler*, 838 F.2d at 979 (citing *Chardon v. Fumero Soto*, 462 U.S. 650, 657 (1983)), "and operation of these tolling rules is 'governed by state law,'" *id.* (citing *Wilson v. Garcia*, 471 U.S. 261, 269 (1985)).

The Missouri savings statute provides that "[i]f any action shall have been commenced within the times respectively prescribed in sections 516.010 to 516.370, and the plaintiff therein suffer a nonsuit, . . . such plaintiff may commence a new action . . . within one year after such nonsuit suffered. . . ." Mo. Rev. Stat. § 516.230.

6

"Missouri no longer requires due diligence in serving a party to save a claim from being time barred by limitations." *In re Estate of Klaas*, 8 S.W.3d 906, 908 (2000) (citing *Ostermueller v. Potter*, 868 S.W.2d 110, 111 (Mo. banc 1993); and *Keys v. Nigro*, 913 S.W.2d 947, 949 (Mo. Ct. App. 1996)). "Diligence is not a factor in determining when an action is commenced, nor is it necessary to invoke the savings statute. . . ." *Id.* at 908-09 (citing *Keys*, 913 S.W.2d at 949-50). "A civil action is commenced by filing a petition with the court." *Ostermueller*, 868 S.W.2d at 111 (citing Mo. Sup. Ct. R. 53.01).

Defendants acknowledge that Plaintiff filed her original Complaint within the applicable statutes of limitations, and they do not dispute that Plaintiff filed the Complaint within one year of the nonsuit. Relying on *Luney v. SGS Auto. Servs., Inc.*, 432 F.3d 866 (8th Cir. 2005), however, Defendants argue that Missouri's savings statute does not apply to Plaintiff's § 1983 claims because they are not specifically enumerated in Missouri's statutes of limitations. Defendants' reliance on *Luney* is misplaced.

In *Luney*, the court stated that the plaintiff's argument that she should be permitted to refile her cause of action under Mo. Rev. Stat. § 516.230 failed "because the Missouri Savings Statute only applies to actions prescribed in sections 516.010 to 516.370 of the Missouri Revised Statutes. Her actions, filed

7

under Title VII, were not contained within those provisions." *Luney*, 432 F.3d at 867-868.

This Court has very recently had occasion to analyze this precise issue in *Jordan v. Bell*, No. 4:21-CV-1242 HEA, 2025 WL 973755 (E.D. Mo. Mar. 31, 2025). In Jordan, this Court determined that the borrowed statute of limitation for Section 1983 cases includes borrowing that statute's tolling provisions as well. Finding that while the language in *Luney* appears to be consistent with Defendants' argument, Defendants fail to recognize the key difference. Title VII has its own, independent statute of limitations. See 42 U.S.C. §§ 2000e–5(e)(1) (establishing 180–day statute of limitations for Title VII actions); *Conville v. Emerson Elec*., 228 F. App'x 628, 629 (8th Cir. 2007). Thus, "the savings clause does not apply because a claim under Title VII does not 'borrow' the limitations periods prescribed in sections 516.010 to 516.370 of the Missouri Revised Statutes." *See Hubler v. Nevada R-5 Sch. Dist.*, No. 06-5088-CV-SW-DW, 2007 WL 9717834, at *1 (W.D. Mo. Mar. 30, 2007). "This reading is consistent with the *Luney* holding and is in harmony with the text of the savings statute itself." *Id.* "By its own terms, the Missouri Savings Statute describes its scope as applying to any action commenced within the *times* prescribed in §§ 516.010 to 516.370, not the *actions* prescribed therein." *Id.* The Court finds the reasoning in *Hubler* persuasive

8

Because Plaintiffs' §1983 claims borrow Missouri's statute of limitations, *Chandler*, 838 F.2d at 978-79 (explaining that the five-year statute of limitations found in Mo. Rev. Stat. § 516.120 applies to § 1983 claims); *Kaster*, 975 F.2d at 1382 (personal injury statute applies to § 1985 claims), they also borrow Missouri's savings clause, *see Chandler*, 838 F.2d at 979 ("Borrowing Missouri's statute of limitations also requires borrowing Missouri's tolling statutes."), which is found in Mo. Rev. Stat. § 516.230, *see* Mo. Rev. Stat. § 516.230 (applying to any action "commenced within the times respectively prescribed in sections 516.010 to 516.370"). *But see Charron v. Conley*, No. 4:07CV627 CEJ, 2008 WL 3200798, at *3 (E.D. Mo. Aug. 6, 2008) (finding, without support, that § 516.230 does not apply to suits brought under § 1983).

**Eighth and Fourth and Fourteenth Amendments**

Plaintiff lumps her Section 1983 claims together in Counts I and III, against Defendants Thorpe, McKinney, Craven, Helvey, Christian, Sheets, and Staas (Count I-Eighth, Fourth, and Fourteenth Amendments) and Defendant Montgomery County (Count III-Fourth and Fourteenth Amendments).

Section 1983 of Title 42, United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for

9

redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C.A. § 1983.

"Pretrial detainee § 1983 claims are analyzed under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment prohibition of cruel and unusual punishment." *Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011). As a practical matter, pretrial detainees "are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment." *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007); *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004); *Eisenbach v. City of St. Louis, Missouri*, No. 4:23-CV-462-HEA, 2025 WL 404562, at *3 (E.D. Mo. Feb. 5, 2025)

> The Due Process Clause of the Fourteenth Amendment constrains the use of force against a pretrial detainee. *Kingsley v. Hendrickson*, 576 U.S. 389, 397, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015). A violation occurs if an official purposely or knowingly uses force against a detainee and the use of force is objectively unreasonable. Id. at 396-97, 135 S.Ct. 2466. A use of force is reasonable if it is rationally related to a legitimate, nonpunitive governmental purpose and does not appear excessive in relation to that purpose. Id. at 398, 135 S.Ct. 2466. Objective reasonableness turns on the facts and circumstances of each particular case. *Id*. at 397, 135 S.Ct. 2466.

*Webster v. Saint Louis Cnty.*, No. 24-1127, 2025 WL 1187171, at *1 (8th Cir. Apr. 24, 2025). Thus, any Eighth Amendment claims are dismissed as the claims will be analyzed under the Fourteenth Amendment.

10

It is the Fourteenth Amendment's Due Process Clause that protects Plaintiff as a pretrial detainee. The objective reasonableness standard applies to excessive force claims brought by pretrial detainees. *Kingsley*, 576 U.S. at 396-97. This is the same objective reasonableness standard that applies to arrestees under the Fourth Amendments. *Andrewes v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001). "[T]he defendant's state of mind is not a matter that a plaintiff is required to prove." *Kingsley*, 576 U.S. at 395. *Gentry v. Seiger*, No. 4:23-CV-01095-BAB, 2025 WL 644270, at *7 (W.D. Ark. Feb. 27, 2025). Plaintiff's Fourth Amendment will be analyzed under the Fourteenth Amendment in her Section 1983 claim.

**Qualified Immunity**

Defendants Thorpe and Staas move to dismiss Count I based on qualified immunity.

> A government official is entitled to qualified immunity from suit unless the official's conduct violated a clearly established right of which a reasonable official would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To overcome a claim of qualified immunity at the pleading stage, a plaintiff must allege facts plausibly showing (1) that the official violated a statutory or constitutional right and (2) that the right was clearly established at the time of the challenged conduct. *LeMay*, 18 F.4th at 287.

*Webster v. Saint Louis Cnty.*, No. 24-1127, 2025 WL 1187171, at *1 (8th Cir. Apr. 24, 2025). Thorpe and Staas argue that the alleged claims of oral abuse do not rise to the level of a constitutional violation. The Court agrees. Such conduct does not

11

give rise to a constitutional claim. See *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985) ("Verbal threats do not constitute a constitutional violation"). Similarly, taunts, name calling, and the use of offensive language does not state a claim of constitutional dimension. *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (inmate's claims of general harassment and of verbal harassment were not actionable under § 1983); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) (verbal threats and abuse by jail officials did not rise to the level of a constitutional violation); *Langhorn v. Gilean*, No. 2:25-CV-00039-KGB-ERE, 2025 WL 623641, at *3 (E.D. Ark. Feb. 26, 2025). Without more, Plaintiff fails to state a claim for a constitutional violation by Defendants Thorp and Staas.

**Montgomery County**

Defendant Montgomery County moves to dismiss Count III arguing Plaintiff's Complaint is insufficient to state a claim pursuant to 42 U.S.C. § 1983. "It is well established that a municipality cannot be liable under § 1983 under 'a respondeat superior theory, that is, solely because it employs a tortfeasor.' " *Robbins v. City of Des Moines*, 984 F.3d 673, 681 (8th Cir. 2021) (quoting *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1214 (8th Cir. 2013)). "[U]nder § 1983, local governments are responsible only for 'their own illegal acts.' " *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). Therefore, a "municipality may only be liable for a constitutional

violation resulting from (1) an official municipal policy, (2) an unofficial custom, or (3) failure to train or supervise." *Robbins*, 984 F.3d at 681-82. With respect to Montgomery County, Plaintiff's Complaint alleges:

> At the time of the occurrences that are subject of Plaintiff's Complaint, Plaintiff had clearly established constitutional rights, including the right under the Fourth, Eighth and Fourteenth Amendments to be secure in her person from sexual harassment and sexual assault while a detainee in Defendants' jails.
>
> Montgomery County's policymaking officials, employees, agents, and representatives knew, or should have known, of these rights at the time of the complained of conduct as they were clearly established.
>
> The acts or omissions of Montgomery County and its policymaking officials, employees, agents, and representatives, as described herein, deprived Plaintiff of her constitutional and statutory rights and caused her damages.
>
> Montgomery County and its policymaking officials, employees, agents, and representatives intentionally, knowingly and purposely deprived Plaintiff of her clearly established rights, privileges, and immunities as secured by the Constitution and laws of the United States in violation of 42 U.S.C. § 1983.
>
> Montgomery County had the authority and duty to train, supervise, discipline, and otherwise control the jail officers and guards, including the Defendants identified herein.
>
> Montgomery County had a duty to provide reasonable training to prevent their employees from wrongfully sexually harassing and/or assaulting Plaintiff in violation of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.
>
> Montgomery County failed to train, inadequately trained, or negligently trained their employees in a manner that a reasonable county would have under the circumstances.
>
> Montgomery County and its policymaking officials, employees, agents, and

13

representatives maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, including those housed in its jails as detainees, which were the moving forces behind and proximately caused the violations of Plaintiff's Constitutional rights as set forth herein.

Montgomery County's deliberate indifference to Plaintiffs' Constitutional rights includes, but is not limited to:

a. failing to train Defendants Foree, Pape, Penning, and Storzer, to report, protect and prevent jail employees from sexually harassing or sexually assaulting jail detainees;

b. failing to train Defendants Thorp, McKinney, Craven, Helvey, Christian, Sheets, and Staas, that sexual harassment towards jail detainees and/or sexual contact between officers and inmates is not acceptable and prohibited under all circumstances;

c. failing to supervise the individual Defendant employees listed herein, including Defendants Christian and Sheets who had a known history of misconduct and proclivities for sexual deviance made them unfit to be jail guards overseeing vulnerable women including Plaintiff;

d. failing to adopt and/or enforce proper policies in the identification and prevention of improper sexual harassment and/or sexual assault; and

e. such further acts of deliberate indifference as discovery will reveal.

Montgomery County and its policymaking officials, employees, agents, and representatives have developed and maintained long-standing, department-wide customs, policies, procedures, and practices, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff and other jail detainees. The inadequacy of training and/or supervision is so likely to result in violation of Constitutional and federal rights, such as those described herein—in light of the particular duties assigned to its employees including the Defendants identified herein —that the failure to provide proper training and supervision is deliberately indifferent to those rights.

> The deliberately indifferent training and supervision provided by Montgomery County and its officials, employees, agents, and representatives resulted from a conscious and deliberate choice to follow a course of action from among various alternatives available to it and were moving forces in the constitutional and federal violation injuries complained of by Plaintiff.
>
> As a direct and proximate result of Montgomery County's interference with Plaintiff's federal Constitutional and statutory rights, Plaintiff has suffered the aforementioned damages and losses, which are expected to be ongoing.

Plaintiff offers no prior instance of alleged misconduct and relies on threadbare recitals of the elements of her claims supported by conclusory statements. There is no factual support for her asserted legal conclusions. Plaintiff does not cite another incident of sexual assault in the Montgomery County jail to support her alleged pattern of unconstitutional conduct. As this Court has previously explained:

> "'[P]laintiffs who want to proceed under *Monell* need not use precise legal terms like "unconstitutional custom" in their pleadings; they need only plead facts from which such a custom can be inferred. Here, Plaintiff has done the opposite: He has used the appropriate legal terms for a *Monell* custom claim, but he has not pled sufficient facts to support an inference that such a custom exists.'"

*Sarich v. Missouri*, No. 4:23-CV-00943-SEP, 2025 WL 901276, at *3–4 (E.D. Mo. Mar. 25, 2025)(Quoting *Miller as Next Friend for Rippeto v. City of St. Louis*, 2024 WL 1366797, at *4–5 (E.D. Mo. Mar. 31, 2024) (quoting *Naes v. City of St. Louis,* 2021 WL 6049815, at *7 (E.D. Mo. Dec. 21, 2021)). Because Plaintiff's allegations fail to state sufficient facts to support the existence of a continuing, widespread,

15

persistent pattern of unconstitutional misconduct, her claims must be dismissed. See, e.g., *Ball-Bey v. Chandler*, 415 F. Supp. 3d 884 (E.D. Mo. 2019) (finding allegations insufficiently specific to establish a widespread pattern of misconduct).

Plaintiff's failure-to-train claim fares no better. To state a *Monell* failure-to-train claim, a plaintiff must plead facts that show Defendant's training practices were inadequate; Defendant was deliberately indifferent to the rights of others in adopting these training practices and Defendant's failure to train was a result of deliberate and conscious choices it made; and Defendant's alleged training deficiencies caused Plaintiff's constitutional deprivation. *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013).

To plead deliberate indifference, a plaintiff must show that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality...can a city be liable for such a failure under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

16

In support of the Monell failure-to-train claim, Plaintiff alleges that Defendant failed to adequately train employees regarding sexual harassment and assault. Although Plaintiff makes a passing reference to Christian and Sheets having a known history of misconduct and proclivities for sexual deviance, she fails to set out any facts of prior incidents of similar conduct that would have put the County on notice that a training or disciplinary program was constitutionally deficient. Plaintiff's failure-to-train claim thus fails for the same reason as her custom claim: he fails to establish a pattern of constitutional violations. See *Ulrich*, 715 F.3d at 1061 (affirming district court's dismissal of Monell failure to train or supervise claim where the plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

Because the Complaint fails to sufficiently allege any basis for liability under *Monell*, the motion to dismiss Count III will be granted.

**Negligent Infliction of Emotional Distress**

To state a claim for negligent infliction of emotional distress in Missouri,

a plaintiff must plead the general elements of negligence—that is, "a legal duty of the defendant to protect the plaintiff from injury," a breach of that duty, proximate cause, and injury—as well as two additional elements— "that the defendant should have realized that his conduct involved an unreasonable risk of causing distress" and "that the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant." *Thornburg v. Fed. Express Corp.*,

17

> 62 S.W.3d 421, 427 (Mo. Ct. App. 2001). The petition alleged only that "Defendants owed plaintiff a duty to not cause [him] damage by engaging in tortious and injurious actions." This general assertion does not describe a legally recognized duty. See *id*. (affirming dismissal because petition did not allege a legally recognized duty). The cases that Couzens cites to support recognition of such a broad duty are inapposite. *See Hoover's Dairy, Inc. v. Mid–Am. Dairymen, Inc./Special Prods., Inc*., 700 S.W.2d 426, 431–32 (Mo. 1985) (discussing whether knowledge that injury will result is required for duty); *Bass v. Nooney Co*., 646 S.W.2d 765, 766–74 (Mo. 1983) (applying the doctrine of *res ipsa loquitur* to case involving mental distress resulting from being trapped in a stalled elevator, and rejecting the requirement of physical injury to recover for negligent infliction of emotional distress).

*Couzens v. Donohue*, 854 F.3d 508, 518–19 (8th Cir. 2017). While Plaintiff's Complaint alleges Defendants Foree, Pape, Penning, and Storzer were supervisory employees and that Plaintiff complained to them, the Complaint fails to set out any facts of a duty they owed to Plaintiff, that the duty was breached, and that the breach was the proximate cause of Plaintiff's injuries. Additionally, the Complaint fails to set out any facts which would give rise to a finding their conduct posed an unreasonable risk of causing Plaintiff's emotional distress. Count II will be dismissed.

## Conclusion

Based on the foregoing, Defendants' Motions to Dismiss are granted in part and denied in part. Plaintiff's request to file an amended complaint will be granted.

Accordingly

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Count I is denied.

**IT IS FURTHER ORDERED** that Defendants Foree, Pape, Penning, and Storzer's Motion to Dismiss Count II is granted.

**IT IS FURTHER ORDERED** that Defendant Montgomery County's Motion to Dismiss Count III is granted.

**IT IS FURTHER ORDERED** that Plaintiff is given 14 days from the date of this Opinion, Memorandum, and Order to file an amended complaint.

Dated this 5th day of May, 2025.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE